Opinion issued August 11, 2011

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00610-CV

———————————

Nilesh Bavishi and Dipti Bavishi, Appellants

V.

Sterling Air
Conditioning, Inc. d/b/a Airtron, Inc., a/k/a Airtron Heating & Air
Conditioning,
Appellee



 



 

On Appeal from the 268th District Court

Fort Bend County, Texas



Trial Court Case No. 09-DCV-174880

 



 

MEMORANDUM OPINION

          Sterling
Air Conditioning, Inc. d/b/a Airtron,
Inc., a/k/a Airtron Heating & Air
Conditioning (“Airtron”) sued Nilesh and Dipti Bavishi (“Bavishi”) on a sworn
account and asserted alternative claims for breach of contract and quantum
meruit arising out of Bavishi’s failure to pay Airtron for air conditioning
work that Airtron had completed at Bavishi’s new house.  The trial court rendered summary judgment in
favor of Airtron.  In four issues,
Bavishi contends that the trial court erroneously rendered summary judgment because
(1) Airtron failed to allege that all lawful offsets had been applied to the account;
(2) Airtron did not conclusively establish that it fully performed under the
contract and that Bavishi breached the contract; (3) Airtron failed to prove
that Bavishi accepted Airtron’s services; and (4) Airtron’s summary
judgment affidavit contained conclusory statements.

          We
affirm.

Background

          Bavishi
began construction on a new house in 2006.  In June 2008, Transtar Builders, Inc.
(“Transtar”), the general contractor on the project, terminated its
relationship with G.K. Mechanical, Inc., the original air conditioning
subcontractor.  Transtar hired Airtron as
air conditioning subcontractor to complete the project in place of G.K.
Mechanical, and it executed a contract with Airtron for a “total turnkey price”
of $42,954.  Transtar’s contract with
Airtron listed nine
distinct items under “Scope of Work Included,” including:  installing condensers, programmable
thermostats, a zone control board, fresh-air intake controllers, and supply and
return grills; connecting the vent hoods; adding supply drops to a second floor
bathroom; modifying “return air on the first floor plus additional return on
[second] floor landing”; obtaining a permit from the City of Sugar Land; and
supplying “miscellaneous material and labor.” 
Under the “Notes” section, the contract provided that:  “Condition of existing coils, furnaces, and
ductwork is unknown and is not warranted through Airtron.  Any repairs or additional services to
complete start-up will be extra.”  The
contract similarly stated that the “condition of zone dampers is unknown,
replacement of existing equipment (if needed) is extra.”  This contract did not include a provision
specifically obligating Airtron to correct any problems created by previous
subcontractors.

In March 2009, Bavishi terminated his
relationship with Transtar and himself assumed the role of general contractor.  At the time Bavishi fired Transtar, Airtron
had not yet completed its work for Transtar, although it had installed some materials
at Bavishi’s house, including grills, registers, and fan covers.

          On
May 12, 2009, Bavishi and Airtron executed a contract governing Airtron’s
remaining work on the project.  This
contract provided that Airtron would install thermostats and a total of seven
condensers for a price of $32,215.  The
contract also included the following statement:

This Contract has been
modified to show what remaining work is to be completed, as per the original
agreement.  Based upon previous
conversations, the remaining [w]ork left is 1) Completing the trim, both
outside and inside the house.  2) Setting
the condensers on Builder supplied pad. 
3) Starting up systems and installing all thermostats to appropriate
locations.

 

As with Airtron’s contract with Transtar, Airtron’s
contract with Bavishi did not include a provision requiring Airtron either to
correct any problems with the air conditioning system created by previous
subcontractors or to complete all necessary work to make the system operational.

On June 2, 2009, Airtron issued an
invoice to Bavishi in the amount of $32,215.50 for “HVAC final—finish trim & set units.”  During the course of Airtron’s work at Bavishi’s
property, Airtron employees discovered a problem in the copper line that fed
coolant to the condensers.  The copper
line had been installed by another company, but, at Bavishi’s request, Airtron
repaired a leak in the line.  Airtron
invoiced Bavishi an additional $150 for parts and labor.

          Beginning
in June 2009, after Airtron had installed the contracted-for condensers and
thermostats, Bavishi and Airtron disputed both the quality of Airtron’s work
and the scope of its responsibilities under the contract.  Specifically, the parties disputed whether the
contract obligated Airtron to correct all problems with the air conditioning
system that were created by the subcontractors who had worked on the project
prior to Airtron.  After the parties were
unable to achieve a resolution of this dispute, Airtron ceased working on the
project on July 1, 2009.

          Bavishi
subsequently refused to pay Airtron in accordance with the two invoices Airtron
had issued.  Airtron then sued Bavishi on
a sworn account and asserted claims for breach of contract and quantum
meruit.  Airtron attached the affidavit
of William Nylan, Airtron’s Operations Manager, to its original petition in
support of the sworn account.  Nylan
averred that he had personal knowledge of the contents of the affidavit and control
over the records of the account.  He stated:

According to [Airtron’s]
books and records, pursuant to request by [Bavishi], [Airtron] sold, delivered,
and installed for [Bavishi] certain labor, materials and supplies on account to
one or more real properties, on which account a systematic record has been
kept.  A true and correct copy of the
invoice(s) for said materials, labor, and supplies so
provided . . . is (are) attached hereto as Exhibit “A-1”
and incorporated herein for all purposes.

 

According to [Airtron’s]
books and records, this claim is just and true and the amount due and unpaid by
[Bavishi] to [Airtron] after allowing for all just and lawful offsets,
payments, and credits is [$32,365.]

 

Airtron attached the contract and the
two invoices to Bavishi to its original petition.  Airtron also alleged that it had completed its
obligations under the May 2009 contract and that Bavishi had breached the
contract by failing to pay the invoiced amounts.  In its quantum meruit claim, Airtron asserted
that it was entitled to the reasonable value of materials and supplies that it
had sold and delivered to Bavishi while Transtar was still the general
contractor on the project and before Airtron entered into its own contract with
Bavishi.

          Bavishi
answered by filing an unsworn general denial.

          Airtron
moved for summary judgment on each of its own claims.  As summary judgment evidence, Airtron
attached an affidavit by William Nylan; its contract with Bavishi; the two
unpaid invoices to Bavishi; an unpaid invoice for $2,972.80 to Transtar for
work performed by Airtron for Transtar prior to Bavishi’s assuming the role of
general contractor; and Bavishi’s interrogatory answers, in which Bavishi
acknowledged the contract he had made with Airtron and admitted that he owed
Airtron $21,742.

Nylan averred that at the time
Bavishi fired Transtar as the general contractor Transtar owed Airtron
$2,972.80 for materials, including “grills, registers, and fan covers,” that
Airtron had installed at Bavishi’s property pursuant to its contract with
Transtar.  Airtron argued that it was
entitled to recover those funds under quantum meruit.  Nylan further averred that Airtron “sold,
delivered, and installed for [Bavishi] certain labor, materials and supplies on
account” and that Airtron “provided and/or installed said air conditioning
labor, materials and supplies pursuant to the terms of [the May 2009 contract
between Airtron and Bavishi].”  According
to Nylan, Airtron’s records indicated that, “after allowing for all just and
lawful offsets, payments, and credits,” Bavishi owed it $32,365 on its suit on
a sworn account or, alternatively, for breach of contract.

          In
his interrogatory answers, Bavishi claimed that he was entitled to $10,473 in
offsets because, after Airtron left the project, he had to hire additional air
conditioning subcontractors to “complete the work” and make the air
conditioning system operational.[1]  Airtron argued that Bavishi was not entitled
to any of the claimed offsets because the subsequent subcontractors corrected
deficiencies in the work of subcontractors that Transtar had hired prior to
contracting with Airtron.  These
subcontractors did not correct deficiencies in the work that Airtron had
completed pursuant to its contract with Bavishi.  Because Airtron was not contractually
obligated under either its original contract with Transtar or its subsequent contract
with Bavishi to correct the work of the prior subcontractors, it argued that
Bavishi was not entitled to any offsets.

          In
response to Airtron’s summary judgment motion, Bavishi argued that the summary
judgment evidence reflected that “[Airtron] did not finish the job, that
[Bavishi] had to expend considerable sums after [Airtron] left [the job] to
correct and complete the work [Airtron] had contracted to do, and that [Bavishi
was] entitled to significant offsets to the amount of [Airtron’s] claim.”  Bavishi argued that Airtron’s original
contract with Transtar was for a “turnkey job,” that Airtron’s contract with
Bavishi noted that “the work in the original contract was incomplete and that
the new contract was a modification of the previous one,” and that the
“turnkey” contract between Airtron and Bavishi required Airtron “to recognize
the previous problems with the [air conditioning] system and make it
operational,” and this was not done.  Bavishi
argued that he was entitled to over $10,000 in offsets expended “to correct the
inadequacies of Airtron’s work.”

          As
summary judgment evidence, Bavishi attached his own affidavit, Airtron’s
contract with Transtar, and a series of e-mails between Bavishi and Nylan discussing
the problems with the air conditioning system. 
Bavishi averred that Airtron’s contract with Transtar was “for a
‘turnkey price’ for Airtron to complete any necessary work so that the air
conditioning would be in working order.” 
He further stated that the May 2009 contract covered not just the
installation of condensers and thermostats, but also covered the completion of “any
air conditioning work to make the system operational.”  Bavishi averred:

Airtron did not do the work
it contracted to do.  From June 14
through July 1, 2009, I sent Airtron a series of lengthy emails explaining the
problems with the system and the corrective action that was necessary.  These are attached as Exhibit C.  As the email of June 30 at 7:24 P.M.
indicates, Airtron had the responsibility to correct any problems with the air
conditioning system that existed when Airtron started the job, regardless of
how or by whom those problems arose. 
Airtron did not take any corrective action and left the job about July 1
(without obtaining a final inspection as required for an occupancy permit from
the City of Sugar Land).  Airtron has performed
no work since.

 

Bavishi then averred that he had spent over $10,000
since Airtron left the project to make the air conditioning system operational,
and “[a]ll of [those] expenses were for work that Airtron had contracted to do
but did not.”

          Without
specifying the basis for its ruling, the trial court rendered summary judgment
in favor of Airtron and awarded it a total of $35,337.80 in damages, $4,496.12
in pre-judgment interest, $6,250 in attorney’s fees, and $12,250 in conditional
post-trial and appellate attorney’s fees. 
After the trial court denied Bavishi’s motion for new trial, this appeal
followed.

Standard of Review

          We
review de novo the trial court’s ruling on a summary judgment motion.  Mann
Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848
(Tex. 2009).  To prevail on a traditional
summary judgment motion, the movant must establish that no genuine issues of
material fact exist and that it is entitled to judgment as a matter of
law.  Tex.
R. Civ. P. 166a(c); Little v. Tex.
Dep’t of Criminal Justice, 148 S.W.3d 374, 381 (Tex. 2004).  A party moving for summary judgment on its
own claims must conclusively prove all essential elements of the claim.  See
Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); Tex. R. Civ. P. 166a(a) (“A party
seeking to recover upon a claim . . . may, at any time
after the adverse party has appeared or answered, move with or without
supporting affidavits for a summary judgment in his favor upon all or any part
thereof.”).  A matter is conclusively
established if reasonable people could not differ as to the conclusion to be
drawn from the evidence.  See City of Keller v. Wilson, 168 S.W.3d
802, 816 (Tex. 2005).

          If
the movant meets its burden, the burden then shifts to the nonmovant to raise a
genuine issue of material fact precluding summary judgment.  See
Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).  The evidence raises a genuine issue of fact
if reasonable and fair-minded jurors could differ in their conclusions in light
of all of the summary judgment evidence. 
See Goodyear Tire & Rubber Co.
v. Mayes, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).  To determine if the nonmovant has raised a
fact issue, we review the evidence in the light most favorable to the
nonmovant, crediting favorable evidence if reasonable jurors could do so, and
disregarding contrary evidence unless reasonable jurors could not.  See
Fielding, 289 S.W.3d at 848 (citing City
of Keller, 168 S.W.3d at 827).  We
indulge every reasonable inference and resolve any doubts in the nonmovant’s
favor.  See Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002)
(citing Sci. Spectrum, Inc. v. Martinez,
941 S.W.2d 910, 911 (Tex. 1997)).

          When,
as here, the trial court’s summary judgment does not state the basis for the
court’s decision, we must uphold the judgment if any of the theories advanced
in the motion are meritorious.  Provident Life & Accident Ins. Co. v. Knott,
128 S.W.3d 211, 216 (Tex. 2003).

 

 

 

Suit on a Sworn Account

          In
his first issue, Bavishi contends that the trial court erroneously rendered
summary judgment in favor of Airtron on its sworn account because Airtron
failed to allege that all lawful offsets, payments, and credits had been
applied.

          Texas
Rule of Civil Procedure 185 applies to “any claim for a liquidated money
demand . . . [for] labor done or labor or materials
furnished . . . .”  Tex. R. Civ. P. 185.  This rule is not a rule of substantive law;
rather, “it is a rule of procedure regarding the evidence necessary to
establish a prima facie right of recovery” on certain types of contractual
account claims.  See Rizk v. Fin. Guardian Ins. Agency, Inc., 584 S.W.2d 860, 862
(Tex. 1979); Smith v. CDI Rental
Equipment, Ltd., 310 S.W.3d 559, 566 (Tex. App.—Tyler 2010, no pet.); Panditi v. Apostle, 180 S.W.3d 924, 926
(Tex. App.—Dallas 2006, no pet.).

          Rule
185 provides that “when an action is founded on an open account on which a
systematic record has been kept and is supported by an affidavit, the account
shall be taken as prima facie evidence of the claim, unless the party resisting
the claim files a written denial under oath.” 
Panditi, 180 S.W.3d at 926; see Tex.
R. Civ. P. 185.  To establish a
prima facie case in a suit on a sworn account, the plaintiff must strictly
comply with the requirements of Rule 185. 
Nguyen v. Short, How, Frels &
Heitz, P.C., 108 S.W.3d 558, 562 (Tex. App.—Dallas 2003, pet. denied).  The plaintiff’s petition “must contain a
systematic itemized statement of the services rendered, reveal offsets made to
the account, and be supported by an affidavit stating the claim is within the
affiant’s knowledge and that it is ‘just and true.’”  Id.;
see also Panditi, 180 S.W.3d at 926
(stating requirements for sworn account petition and accompanying
affidavit).  If there is a deficiency in
the plaintiff’s sworn account, the account will not constitute prima facie
evidence of the debt.  Panditi, 180 S.W.3d at 927; Nguyen, 108 S.W.3d at 562.

          The
defendant resisting the sworn account must also strictly comply with the
requirements of Rule 185, “or he will not be permitted to dispute the receipt
of the services or the correctness of the charges.”  See
Panditi, 180 S.W.3d at 927; see also
Vance v. Holloway, 689 S.W.2d 403, 404 (Tex. 1985) (per curiam) (“Holloway
failed to file a sworn denial and he has, therefore, waived his right to
dispute the amount and ownership of the account.”).  Rule 185 requires the defendant to “comply
with the rules of pleading” and “timely file a written denial, under oath,” or
else the defendant “shall not be permitted to deny the claim, or any item
therein.”  Tex. R. Civ. P. 185; Panditi,
180 S.W.3d at 927 (noting that Rule 185 requires sworn denial to be written and
verified by affidavit).  To place the
plaintiff’s sworn account claim at issue, the defendant must file a “special
verified denial of the account” in accordance with Texas Rule of Civil
Procedure 93.  See Huddleston v. Case Power & Equip. Co., 748 S.W.2d 102, 103
(Tex. App.—Dallas 1988, no writ); see
also Tex. R. Civ. P. 93(10) (“A pleading setting up
any of the following matters, unless the truth of such matters appear of
record, shall be verified by affidavit[:] 
A denial of an account which is the foundation of the plaintiff’s
action . . . .”). 
This sworn denial must be included in the defendant’s answer; a sworn
denial in a response to a summary judgment motion does not satisfy Rule
185.  See
Cooper v. Scott Irrigation Constr., Inc., 838 S.W.2d 743, 746 (Tex. App.—El
Paso 1992, no writ); see also Rush v.
Montgomery Ward, 757 S.W.2d 521, 523 (Tex. App.—Houston [14th Dist.] 1988,
writ denied) (“Only in the affidavit accompanying his response to Ward’s motion
for summary judgment did appellant dispute the correctness and fairness of the
charges, and demand additional proof of his liability.  Because the combined effect of Texas Rule of
Civil Procedure 185 and Texas Rule of Civil Procedure 93(10) required appellant
to raise those claims in his answer, we hold that appellant raised his
assertions too late.”).

          If
the defendant fails to file a verified denial to the sworn account, the sworn
account is received as prima facie evidence of the debt, and the plaintiff, as
summary judgment movant, is entitled to summary judgment on the pleadings.  Nguyen,
108 S.W.3d at 562; see Livingston Ford
Mercury, Inc. v. Haley, 997 S.W.2d 425, 430 (Tex. App.—Beaumont 1999, no
pet.) (holding that when plaintiff files proper sworn account petition but
defendant does not comply with Rule 185, the petition will support summary
judgment and “additional proof of the accuracy of the account is unnecessary”).  “In other words, a defendant’s noncompliance
with rule 185 conclusively establishes that there is no defense to the suit on
the sworn account.”  Nguyen, 108 S.W.3d at 562; see
Whiteside v. Ford Motor Credit Corp., 220 S.W.3d 191, 194 (Tex. App.—Dallas
2007, no pet.) (“When the defendant fails to file a sworn denial and the trial
court enters summary judgment on a sworn account, appellate review is limited
because the defendant will not be allowed to dispute the plaintiff’s
claim.”).  If, however, the plaintiff’s
suit on a sworn account was not properly pleaded pursuant to Rule 185, the defendant
is not required to file a sworn denial.  Panditi, 180 S.W.3d at 927.  In this circumstance, a general denial is
sufficient to controvert the account.  Tex. Dep’t of Corrs. v. Sisters of St.
Francis of St. Jude Hosp., 753 S.W.2d 523, 524 (Tex. App.—Houston [1st
Dist.] 1988, no writ).

          Here,
Bavishi contends that his general denial and sworn affidavit attached to his
response to Airtron’s summary judgment motion, which alleges that several
offsets should be applied to the account, raises a fact issue because Airtron
did not allege that all offsets, payments, and credits had been applied to the
account, and, therefore, Airtron did not properly plead a sworn account in
compliance with Rule 185.  The record,
however, reflects otherwise.

          In
its original petition, Airtron alleged that it “sold and delivered to [Bavishi]
certain heating and air conditioning labor, materials and supplies specified in
the Account.”  Airtron attached its
contract with Bavishi and two unpaid invoices totaling $32,365 to its original
petition.  Airtron also attached the
affidavit of William Nylan.  Nylan
averred that he had personal knowledge of the account and stated:

According to [Airtron’s]
books and records, pursuant to request by [Bavishi], [Airtron] sold, delivered,
and installed for [Bavishi] certain labor, materials and supplies on account to
one or more real properties, on which account a systematic record has been
kept.  A true and correct copy of the
invoice(s) for said materials, labor, and supplies so provided . . . is
(are) attached hereto as Exhibit “A-1” and incorporated herein for all
purposes.

 

According to [Airtron’s]
books and records, this claim is just and true and the amount due and unpaid by
[Bavishi] to [Airtron] after allowing for
all just and lawful offsets, payments, and credits is [$32,365].

 

(Emphasis added.)

Airtron’s petition, affidavit, and
supporting invoices contain all of the information required by Rule 185.  See
Tex. R. Civ. P. 185; Nguyen, 108 S.W.3d at 562 (stating
requirements for sworn account petition and supporting affidavit).  Thus, to dispute Airtron’s implied assertion
that Bavishi was not entitled to any offsets, Bavishi was required to file a
verified denial of the account in compliance with Rule 185 and Rule
93(10).  See Panditi, 180 S.W.3d at 927. 
It is undisputed that Bavishi filed only an unsworn general denial and
did not argue that he was entitled to offsets until his response to Airtron’s
summary judgment motion.  Because Bavishi
did not file a verified denial, “he was precluded from denying ‘the claim or
any item therein.’”  See id. (quoting Tex. R.
Civ. P. 185); Solano v. Syndicated
Office Sys., 225 S.W.3d 64, 67 (Tex. App.—El Paso 2005) (“The failure to
follow Rule 185 precludes the defendant from raising a fact issue and from
disputing the receipt of the items or services rendered or the correctness of
the claim.  The defendant may not deny
the claim or raise an issue that he did not owe the account or that it was wrongfully
charged to him.”).

          We
conclude that because Airtron properly stated that all lawful offsets had been
applied to Bavishi’s account and Bavishi did not file a verified denial
challenging this assertion, Airtron’s petition and supporting affidavit
constituted prima facie evidence of the sworn account which Bavishi waived the
right to dispute, entitling Airtron to summary judgment on its pleadings.  We therefore hold that the trial court
correctly rendered summary judgment in favor of Airtron on its sworn account.

          We
overrule Bavishi’s first issue.[2]

Quantum Meruit

          In
his third issue, Bavishi contends that the trial court erroneously rendered
summary judgment in favor of Airtron on its quantum meruit claim because it
failed to establish that Bavishi accepted Airtron’s services.

          Quantum
meruit is an equitable theory of recovery based on an implied agreement to pay
for benefits received and knowingly accepted. 
Heldenfels Bros., Inc. v. City of
Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992); Tricon Tool & Supply, Inc. v. Thumann, 226 S.W.3d 494, 502
(Tex. App.—Houston [1st Dist.] 2006, pet. denied).  A party can recover in quantum meruit when
non-payment for the services rendered would result in an unjust enrichment to
the party benefited by the work.  Speck v. First Evangelical Lutheran Church
of Houston, 235 S.W.3d 811, 815 (Tex. App.—Houston [1st Dist.] 2007, no
pet.).  To recover in quantum meruit, the
plaintiff must establish that:  (1)
valuable services and/or materials were furnished, (2) to the party sought to
be charged, (3) which were accepted by the party sought to be charged, and (4)
under such circumstances as reasonably notified the recipient that the
plaintiff, in performing, expected to be paid by the recipient.  Heldenfels
Bros., 832 S.W.2d at 41 (citing Vortt
Exploration Co. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990)).  The plaintiff must also demonstrate that its
efforts “were undertaken for the
person sought to be charged; it is not enough to merely show that [its] efforts
benefitted the defendant.”  Hester v. Friedkin Cos., 132 S.W.3d 100,
106 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (emphasis in original).

          Bavishi
contends that he raised a fact issue regarding whether he accepted Airtron’s
services, and he points to his summary judgment affidavit and the attached
series of e-mails between Nylan and himself discussing the problems with the
air conditioning system as evidence that Airtron did not satisfy its
responsibility to correct all problems that arose involving the air
conditioning system.  Airtron argues that
its quantum meruit claim was limited to recovery for the reasonable value of materials
that it provided to Bavishi under its agreement with Transtar before Airtron
contracted directly with Bavishi, including the installation of “grills, registers,
and fan covers,” and that by not objecting to the installation of these
particular materials or claiming that Airtron’s installation of these materials
was faulty Bavishi accepted the materials. 
We agree with Airtron.

          Airtron’s
contract with Transtar obligated it to install, among other things, “steel
supply grills and aluminum fixed bar return grills.”  In his summary judgment affidavit, Nylan
averred that Airtron installed materials, “including grills, registers, and fan
covers,” pursuant to its contract with Transtar and that Transtar did not pay
Airtron for these materials.  After
Bavishi fired Transtar and took over the project as general contractor, he
signed a new contract with Airtron, which specified the remaining work to be
completed and materials to be installed. 
This contract did not mention items such as grills, registers, and fan
covers.  Furthermore, although Bavishi
subsequently informed Airtron of the numerous alleged problems with the air
conditioning system, he never complained that the materials installed under the
Transtar contract, and specified in Airtron’s quantum meruit claim, were
unsatisfactory.  There is also no
evidence that any of the subsequent air conditioning subcontractors hired by
Bavishi after Airtron left the project were required to fix problems concerning
these specific materials.

          We
conclude that, under these facts, the summary judgment evidence establishes
that Bavishi accepted the materials installed pursuant to Airtron’s contract
with Transtar and at issue in Airtron’s quantum meruit claim.  See
also RC Mgmt., Inc. v. Tex. Waste Sys., Inc., No. 04-02-00488-CV, 2003 WL
1712535, at *4 (Tex. App.—San Antonio Apr. 2, 2003, no pet.) (mem. op.) (“[T]he
evidence reflects that RCM did not refuse delivery of the larger containers or
contact TWS to, at the very least, complain of the larger containers.”).  We therefore hold that the trial court
correctly rendered summary judgment in favor of Airtron on its quantum meruit
claim.

          We
overrule Bavishi’s third issue.

 

 

Conclusory Statements in Summary Judgment Affidavit

          Finally,
in his fourth issue, Bavishi contends that the trial court erroneously rendered
summary judgment based on Nylan’s summary judgment affidavit, which contained
legally and factually conclusory statements.[3]

          Affidavits
containing conclusory statements unsupported by facts are not competent summary
judgment evidence.  Prime Prods., Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631, 637
(Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting Aldridge v. De Los Santos, 878 S.W.2d 288, 296 (Tex. App.—Corpus
Christi 1994, writ dism’d w.o.j.)); Rizkallah
v. Conner, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no
pet.) (“A conclusory statement is one that does not provide the underlying
facts to support the conclusion.”).  An
affidavit must be factual—mere
conclusions of the affiant lack probative value.  Prime
Prods., 97 S.W.3d at 637; see also
Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 122 (Tex. 1996) (“[Conclusory
affidavits are neither] credible nor susceptible to being readily
controverted.”).  A conclusory statement
“may set forth an unsupported legal conclusion or an unsupported factual
conclusion.”  Choctaw Props., L.L.C. v. Aledo Indep. Sch. Dist., 127 S.W.3d 235,
242 (Tex. App.—Waco 2003, no pet.).

          Bavishi
contends that Nylan’s statement in his affidavit that “[a]t the time that
Transtar was fired from the job, Transtar owed [Airtron] moneys for work done
by [Airtron] for Transtar at said residence” is conclusory because it is “not
supported by any facts” and “Airtron attached no summary judgment proof.”  We disagree.

          In
addition to the above statement, Nylan’s summary judgment affidavit also
included the following paragraph:

Additionally, pursuant to
[Airtron’s] books and records, Transtar owes [Airtron] for work at the subject
residence, which included grills, registers, and fan covers, a copy of which
unpaid invoice is attached hereto as Exhibit “A-4,” and incorporated herein for
all purposes.  According to [Airtron’s]
books and records, this claim is just and true and the amount due and unpaid by
Transtar to [Airtron] after allowing for all just and lawful offsets, payments,
and credits is [$2,972.80].

 

Airtron also attached the invoice issued to
Transtar, dated May 14, 2009, which reflects an unpaid balance of $2,972.80, to
Nylan’s affidavit.

          We
conclude that, contrary to Bavishi’s assertion, Airtron presented factual
support for the objected-to statement demonstrating the amount that Transtar
owed to Airtron.  See Rivera v. White, 234 S.W.3d 802, 808 (Tex. App.—Texarkana 2007,
no pet.) (“Although all of White’s statements concerning the vehicle damage and
medical care are to some degree conclusory, each furnishes some factual
information that could have been rebutted.”); Choctaw Props., 127 S.W.3d at 242 (“Thus, his ‘conclusory’
statements that he spoke with an agent of the Defendants have factual support
in the affidavit.”).  Nylan’s statement
is supported by facts and, thus, is not conclusory.  We therefore hold that the trial court
properly considered this evidence when rendering summary judgment in favor of
Airtron.

          We
overrule Bavishi’s fourth issue.

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Matthews.[4]











[1]
          Bavishi argued that he was
entitled to the claimed offsets solely in his interrogatory answers and in his
summary judgment response.  He did not
raise this argument in a verified denial of Airtron’s sworn account.





[2]
          Because we hold that the trial
court properly rendered summary judgment on Airtron’s sworn account, we do not
address Bavishi’s second issue—whether
the trial court erred in rendering summary judgment on Airtron’s breach of
contract claim.  In his fourth issue, Bavishi contends that Nylan’s
summary judgment affidavit included conclusory statements supporting Airtron’s
breach of contract and quantum meruit claims. 
Although we address whether Nylan’s statements relating to Airtron’s
quantum meruit claim are conclusory, we do not address whether his statements
relating to Airtron’s breach of contract claim are conclusory.





[3]
          On appeal, Airtron contends that
Bavishi’s objections to Nylan’s affidavit constitute objections to the form of
the affidavit, and, thus, Bavishi failed to preserve this complaint for
appellate review because he did not object to Nylan’s affidavit in the trial
court.  An assertion that a summary
judgment affidavit is conclusory is an objection relating to a substantive
defect, and, thus, an appellant may raise this argument for the first time on
appeal and without obtaining a ruling from the trial court.  McMahan
v. Greenwood, 108 S.W.3d 467, 498 (Tex. App.—Houston [14th Dist.] 2003,
pet. denied); see Brown v. Brown, 145
S.W.3d 745, 751 (Tex. App.—Dallas 2004, pet. denied).  Because Bavishi objects to the substance of
Nylan’s affidavit, he may raise this contention for the first time on appeal.





[4]
          The Honorable Sylvia Matthews,
Judge of the 281st District Court of Harris County, Texas, participating by
assignment.  See Tex. Gov’t Code Ann.
§ 74.003(h) (Vernon 2005).